*SUPPRESSED*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**
JUL 2 3 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 4:25CR380 HEA/JMB |
| v. ) | |
| ) | |
| MUHAMMAD BABAR CHAUDHRY, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, unless otherwise specified below:

### INTRODUCTION

1. During his criminal scheme outlined below, Defendant Muhammad Babar Chaudhry defrauded a local supermarket chain (hereinafter "Victim Supermarket") out of over fifteen million dollars' worth of groceries and inventory. Defendant Chaudhry executed his scheme to defraud by making material misrepresentations in order to enrich himself personally at the expense of Victim Supermarket.

2. Defendant Chaudhry executed his fraud scheme through his ownership of a grocery retail chain based in the Southern District of Ohio called Sunshine Stores, LLC.

3. Victim Supermarket is a supermarket chain headquartered in the Eastern District of Missouri. As part of its business, Victim Supermarket licenses its brand to grocery stores across the country, and it also supplies grocery stores with groceries and other inventory.

4.	Victim Supermarket and Defendant Chaudhry began doing business together in or about May 2021. As part of their business relationship, Victim Supermarket supplied groceries and licensed its brand to Defendant Chaudhry's grocery stores. During his scheme outlined below, Defendant Chaudhry operated 38 Victim Supermarket grocery stores—all of which received groceries and inventory from Victim Supermarket. After delivering groceries and inventory to Defendant Chaudhry's stores, Victim Supermarket would provide Defendant Chaudhry with an invoice listing the amount owed for each delivery.

5.	Under the terms of their business arrangement—which began in or about May 2021—Defendant Chaudhry agreed to pay Victim Supermarket for the groceries and inventory that Victim Supermarket delivered to Defendant Chaudhry's stores. During his scheme to defraud, Defendant Chaudhry and Victim Supermarket had an agreement in place that allowed Defendant Chaudhry to pay for delivered groceries and inventory up 28 days after each invoice was sent. To pay those invoices, Defendant Chaudhry agreed to allow Victim Supermarket to withdraw the invoiced amount directly from Defendant Chaudhry's business bank accounts.

**COUNTS ONE–FOUR**
**(Wire Fraud)**

**I.**	**Defendant Chaudhry's Scheme to Defraud**

6.	Beginning by at least in or about February 2023, and continuing through at least in or about May 2023, in the Eastern District of Missouri, and elsewhere, the defendant, **MUHAMMAD BABAR CHAUDHRY**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Victim Supermarket and to obtain money and property from Victim Supermarket by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

A. **Defendant Chaudhry Defrauded Victim Supermarket Out of Over Seven Million Dollars' Worth of Groceries and Inventory Delivered to His Stores During March 2023.**

7. Before in or about March 2023, Defendant Chaudhry developed a plan to defraud Victim Supermarket. Over the course of months leading up to the execution of his fraud scheme, Defendant Chaudhry gained the trust of Victim Supermarket by consistently paying Victim Supermarket's invoices. After accruing that trust over time, Defendant Chaudhry obtained an agreement from Victim Supermarket that allowed Defendant Chaudhry up to 28 days to pay his invoices. This agreement allowed Defendant Chaudhry to receive millions of dollars' worth of groceries from Victim Supermarket before he ever had to pay for any of those groceries. Defendant Chaudhry abused Victim Supermarket's trust to defraud Victim Supermarket out of over seven million dollars' worth of groceries and inventory that Victim Supermarket delivered during March 2023.

8. To execute his fraud scheme during March 2023, Defendant Chaudhry's company—Sunshine Stores—ordered more than seven million dollars' worth of groceries and inventory from Victim Supermarket. But when those orders were placed at Defendant Chaudhry's direction, he had no intention of paying Victim Supermarket for those orders. Instead of paying Victim Supermarket for the groceries and inventory delivered to his stores—as he promised to do—Defendant Chaudhry sold the groceries and inventory and used the proceeds from those sales to enrich himself personally.

9. On or about March 28, 2023, when he signed an updated business contract with Victim Supermarket, Defendant Chaudhry falsely reiterated his agreement "to pay for all Inventory [*i.e.*, food and non-food] purchased from [Victim Supermarket]." Defendant Chaudhry made this material misrepresentation to continue fraudulently obtaining groceries and inventory from Victim

Supermarket. In truth and fact, however, Defendant Chaudhry had no intention of paying for the groceries and inventory that he ordered from Victim Supermarket during March 2023. Instead, under his scheme to defraud, Defendant Chaudhry would sell Victim Supermarket's groceries to enrich himself personally.

10. Based on Defendant Chaudhry's false promise to pay for groceries and his fraudulent grocery orders, Victim Supermarket provided him more than seven million dollars' worth of groceries and inventory during March 2023. For those March 2023 grocery and inventory deliveries that Defendant Chaudhry fraudulently induced, Victim Supermarket invoiced Defendant Chaudhry a total of approximately $7,655,480.94, which Defendant Chaudhry has never paid.

**B.    During April 2023, Defendant Chaudhry Once Again Fraudulently Induced Victim Supermarket to Provide Him with Additional Deliveries of Groceries and Inventory That Were Worth More than Seven Million Dollars.**

11. After defrauding Victim Supermarket out of more than seven million dollars' worth of groceries and inventory delivered to him during March 2023, Defendant Chaudhry persistently lied to Victim Supermarket about paying for those items. Defendant Chaudhry told those lies so that Victim Supermarket would continue supplying him with groceries and inventory during April 2023. In reliance on Defendant Chaudhry's false representations, Victim Supermarket delivered over seven million dollars' worth of groceries and inventory to his stores during April 2023.

12. For example, in response to an email from Victim Supermarket inquiring into his failure to pay for March 2023 grocery orders, Defendant Chaudhry directed his employee ("Employee J.B.") to make false representations to Victim Supermarket. Defendant Chaudhry directed his employee to communicate with Victim Supermarket in order to falsely convince Victim Supermarket that Defendant Chaudhry was out of the country and unavailable. On that occasion (on or about April 18, 2023), Defendant Chaudhry sent Employee J.B. a text message directing Employee J.B. to falsely represent to Victim Supermarket that "fraudulent activity" in

Defendant Chaudhry's business bank account caused his failure to pay for March 2023 deliveries. Later that same day, Employee J.B. emailed Victim Supermarket Defendant Chaudhry's false and fraudulent message. In truth and fact, however, Defendant Chaudhry's failure to pay Victim Supermarket for groceries and inventory that had been delivered to Defendant Chaudhry's stores was not caused by "fraudulent activity" in his bank account. Instead, Defendant Chaudhry made it impossible for Victim Supermarket to obtain the money it was owed by intentionally draining his business accounts before Victim Supermarket could withdraw the funds.

13. Defendant Chaudhry continued his scheme to defraud by sending Victim Supermarket another materially false email on or about April 25, 2023. In that email, Defendant continued to lie about the reason he did not pay for grocery deliveries, stating that he had "filed police reports today and waiting to get the copies to sent to bank." Continuing to lie, Defendant Chaudhry's went on to state that the "[b]ank is working to open 38 new bank accounts which will take until tomorrow evening for me to go sign the paperwork. I think I will be able to sent [*sic*] a wire on Thursday or Friday." In truth and fact, however, Defendant Chaudhry did not file the police reports he described, nor was his bank working to open 38 new accounts for him.

14. In furtherance of his fraud scheme, Defendant Chaudhry sent an additional materially false email to Victim Supermarket on or about April 27, 2023. In that email, Defendant continued to lie about the reason he did not pay for grocery deliveries, stating that "[m]y new [bank] accounts are opened today tomorrow [*sic*] I will talk to bank to remove any holds so I will be able to move funds tomorrow to new account and send wire." In truth and fact, however, Defendant Chaudhry did not have any intention of paying Victim Supermarket for the prior grocery deliveries by April 28, 2023.

15. Defendant Chaudhry continued his scheme to defraud by sending Victim Supermarket's Chief Financial Officer ("CFO") the following materially false text messages on or about April 28, 2023.

**CFO:** Hello Muhammad. When can I call you this morning, please? We need to discuss the lack of payment and what we are going to do about it.

**Chaudhry:** I have an appointment with bank manager today at 2.30 pm to wire the funds. I will update you soon it is done.

**CFO:** Okay, thank you.

**CFO:** To confirm, you are sending us $7.7 million today?

**Chaudhry:** Yes that is plan.

**CFO:** Please confirm to me when the wire is sent and share fed wire # so my team can quickly find the funds. This delay has put the Company in a very precarious situation.

**Chaudhry:** I understand the frustration
It is same here!

**CFO:** I appreciate that. I do hope your trip home was enjoyable!

**CFO:** Can you confirm that the wire was sent please?

**Chaudhry:** 2 wires are going to SAL
[$]3676961.74
[$]3978519.20
Since the amounts are big bank need more people from there [sic] management to sign off on these.

**CFO:** Understand. They are going out today?

**Chaudhry:** Yes

Despite Defendant Chaudhry's claims to the contrary, he did not attempt to wire the above-referenced funds to Victim Supermarket on or about April 28, 2023.

16. Defendant Chaudhry continued his scheme to defraud the following day—on or about April 29, 2023—by sending Victim Supermarket's CFO the following materially false text messages.

**CFO:** Good morning, Muhammad. The funds did not arrive into our accounts yesterday, nor have we received the wire #s so we can find the funding in the banking system. As a result, your account has been placed on shipping hold.

When we see the funds in the account (or if you can provide me the wire number) we will release the hold.

Going forward, the account will be immediately if payment isn't received timely.

**Chaudhry:** Just called bank

Wire is going to show up in your account by Monday noon.

**CFO:** Can they provide the fed wire numbers?

**Chaudhry:** I think you should wait until Monday noon to put hold.

20230528MMQFMPNG00266211291534FT03

20230528MMQFMPNA00556110031311FT03

You will see the funds on Monday.

In truth and fact, the wire numbers sent by Defendant Chaudhry were entirely fictitious, and he did not attempt to wire the above-described funds.

17. Based on Defendant Chaudhry's material misrepresentations included above, Victim Supermarket delivered approximately $7,546,155.07 worth of groceries and inventory to Defendant Chaudhry's stores during April 2023.

## II. Wire Transmissions

18. On or about the dates set forth below, within the Eastern District of Missouri and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and

obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**MUHAMMAD BABAR CHAUDHRY,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 4/18/2023 | Employee J.B.'s email to Victim Supermarket, which was sent at Defendant Chaudhry's direction. |
| 2 | 4/25/2023 | Defendant Chaudhry's email to Victim Supermarket claiming that the "[b]ank is working to open 38 new bank accounts." |
| 3 | 4/28/2023 | Defendant Chaudhry's text message to Victim Supermarket's CFO stating that he was wiring over seven million dollars to Victim Supermarket. |
| 4 | 4/29/2023 | Defendant Chaudhry's text message to Victim Supermarket's CFO containing purported wire numbers. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Four, Defendant Chaudhry shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;
  d. has been substantially diminished in value; or
  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                A TRUE BILL.

                _____
                FOREPERSON

MATTHEW T. DRAKE
Acting United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney